Your honors, I would like to reserve five minutes for rebuttal. Okay keep your eye on the clock it counts down and we'll try and keep track with you but it's up to you to have a look. Okay I'm going to address the venue issue first unless you prefer to talk about the search and seizure issue but in this case as the court's well aware the defendant was picked up for possession, arrested in Washington for possession of methamphetamine and then later he was In this case it's our position that the venue was not in Alaska that the government did not prove that. In the government's briefing they argue at length regarding facts to support a substantial step for attempted possession with intent to distribute but I think there's some important things that are being glossed over. One of the main things... Can I just ask you I didn't notice is venue an element of the offense here? No it's not an element of venue and not having nothing to do with the proving of the crime. Well it still has to be proven by the government but only by a preponderance of the evidence. Venue has to be proven by a preponderance, yes. Is possession with intent to distribute a continuing offense? Yes. And it can continue while the person is traveling, can it? Yes it can. Why is venue appropriate wherever he ends up with the contraband? Well here he possessed it in Washington and that's the last place he possessed it so to get venue in Alaska there it's our position there'd have to be evidence that he intended to distribute it in Alaska. Well you know the crime for which he was committed, for which he was convicted, was not possession but rather attempt to possess, correct? So I think we should be looking at venue for the crime of which he was convicted, isn't that right? Right and so I think we have to look at whether the substantial step analysis. I think so and the venue statute says that there's venue in any district in which such offense was begun. Now I assume that's the language that is the most troublesome for you. Now before he left Alaska on his trip down to Tucson to pick up the meth, what did he do? He got on the plane in Alaska. Yeah. Did he make any phone calls to Tucson to set this up? No he didn't. The government will try to say that he received a call and then he said I have to go but we don't we don't have that he set up the transaction, we don't have that he purchased the drugs, we don't have arrangements in Alaska by him. Another person set up the plane ticket and the travel but that person's not charged. Are we allowed to make, to first off consider the evidence that there was such a phone call that he said I have to go and if we're allowed to consider that what inferences can we draw from that phone call? Well I think that the problem here is that we, it's not a conspiracy or an eight-year bedding case so we can't infer, make the inferences to impute things from another actor that's not charged because this isn't a conspiracy. But aren't you conflating venue with the substantive crime? I mean at least as I understand the record, correct me if I'm wrong, Pariseau's girlfriend testified about his previous trips from Alaska to Arizona, learning how to strap the drugs to his leg with ace bandages and in this particular case she claims she saw Pariseau with meth in Alaska, witnessed a phone call to Arizona which resulted in his arrest. If that's true, acts as part of this crime occurred in the venue of Alaska that did not? Well it's my argument that those are prior bad acts and they can be used to show mens re but they're not going to show the over act for purposes of a substantial step. Otherwise just getting on the plane is enough but we don't know where the drug, what distribution was ever going to happen. He got off the plane in Seattle, but they didn't arrest him or stop him near the gate to Alaska, they stopped him near the restroom and he could have been leaving the airport. Well but he had a ticket, he was changing planes, right? He had a ticket to go all the way but that can be a ruse, I mean he could get off at any stop. I understand all those things, those are I think fair subject for speculation but all we have to do is preponderance and it seems to me by preponderance of the evidence it's likely that he was changing planes and he was on his way back to Alaska. But this court has made it clear that it is, venue is a jury issue and while it is a different standard it still has to be, if it's going to be, it's such an important right that it still needs to be harmless beyond a reasonable doubt and so it has to be substantial and uncontroverted. Yeah that's a tricky part of this case. Did you ask for an instruction to go to the jury? The defendant did not ask for an instruction to go for the jury and I if I can answer this really quickly, I know you're going to ask me this and the government didn't argue that that was a problem. I'd say that so I don't think it's a waiver issue but in this case since the venue issue was denied twice before so since the court had already ruled on it, it's our position that wouldn't need to be brought up again as far as a jury question. And did the defendant, I gather you're here on appeal but you didn't do the trial? No I did not. Did the defendant at trial say but your honor this is a jury issue? No your honor. So so didn't object when the judge said listen I'm going to decide the venue issue? Well the judge ruled on the venue issue and said I think it's clear venue is in Alaska and then it didn't come up again so I think in that case. But I'm trying to get this straight, at any point did the defendant say judge this is the jury, this is not for you? No. Okay. I know you want to reserve some time, don't worry we'll make sure you get enough time to respond. I just want to be sure when you come up next time there's a Seventh Circuit case, Mohamed and a Sixth Circuit case, you're probably familiar with both of them. I'd like you to address those when you come up again on why at least the reasoning of those cases is not this positive of the venue issue in this case. Okay. Thank you. Can I say one thing about the search and seizure issue because I don't want to waive it. Sure, say what you need to say, don't worry too much about your time, we'll make sure you get a chance to say what you need to say. With regard to the consent, I would like to point out that the officer asked Preseau if he would consent to a pat-down and he said no, maybe I need to speak to an attorney. He didn't just say maybe I need to speak to an attorney, he said no. And then I can't find any, the government has indicated that the defendant was told he didn't have to consent and I don't see that anywhere in the record where he was actually told that. And so I think based on the analysis of the factors there wasn't a wasn't consent and the judge didn't make consent finding, adequate consent findings. Well let's add one more case for you to talk about, Davis. When you come up again talk about Davis and when the Miranda ruling applies as far as asking for counsel or anything of that nature. Okay. Okay, thank you. I wish I hadn't brought it up. Well let's hear from the government. It please the court, James Barkley for the United States. First of all I'd like to extend the U.S. Attorney's Office welcome to the court, to Alaska. As you know we have branch offices in Fairbanks, Juneau and our U.S. Attorney is Karen Leffler and on behalf of all of them and our appellate coordinator Joanne Farrington, welcome to Alaska. I hope you enjoyed some of the glorious weather on Saturday but I have to tell you that today's weather is more typical of a summer day in Alaska. If I might, I'd like to start just by correcting you. So when Alaska starts that poem, let me The comparison ends there. There should be a period after that. The comparison ends there. If I might, your honors, I'd like to quickly direct the court's attention to the record in the appellant's excerpts of record at page 43. This is the transcript of the dialogue from the suppression hearing between the agent at the Seattle Airport seeking consent to search and he clearly advises Mr. Pariseau, who did not say no, by the way, he said maybe I should speak to a lawyer, but he clearly advises Mr. Pariseau as follows, carrying on to page 44, that's well within your rights. So the government contends he told him he didn't have to consent. He then went on to explain, as asserted in the government's brief, that a warrant, he would be detained while the warrant was applied to search this person and that it was by no means guaranteed that a like counsel to direct most of my argument to the venue issue. The court most recently inquired as to whether the defendant ever sought a venue jury instruction and I tried the case. The defendant did not do so, nor did the government, and I think in retrospect now that I know a lot more about venue than I did when this came up the morning of the pretrial conference, I would have asked that the jury be instructed myself, but I didn't ask that either. I think part of the misunderstanding was my fault because I argued to Judge Beislein, which is in my supplemental excerpt to the record, that venue was a question for the judge to decide and I was just wrong. I had never encountered a serious venue issue before. Most drug crimes prosecuted here and certainly those that I've ever handled are ones which, while they are unitary in space and time within the meaning of Corona, they're consummated by the time they end up in the district here. This was a very unusual case. And so the government can see that there are no reported cases from the Ninth Circuit that address the venue challenge to a 41 conviction for attempt. Uh, there there is one case, Your Honor. I believe the Smith decision, but it was reversed, which is why I didn't cite it. It was reversed for prosecutorial misconduct. So I don't think it had much bearing. So basically, for purposes of our case, although we have the reasoning of the Seventh and the Sixth Circuit, uh, there's no definitive opinion that you're aware of that addresses the issue under a 21 U. S. C. 8 41 conviction. That's correct. Not squarely on point. Now there is the Corona decision, which I believe is my best case, because while it did involve a conspiracy and then separate substantive acts of distribution and furtherance of the conspiracy, those acts spanning two states, California and Nevada, the court, this court clearly indicated that 18 U. S. Code Section 32 37 applies to drug trafficking crimes. Now, let me ask you this. I'm just reading the venue statute. Yes, right. Um, maybe inquired of and prosecuted in any district in which such offense was begun, continued or completed. That's 32 37 a. Are you in agreement that that's the best? That's the provision we're supposed to look at? I am, Your Honor. Okay, now begun. I discussed briefly with your adversary. I'd like to focus for a moment on the words that come after that continued. Was it continued in Alaska? Yeah. Your Honor, I believe in almost a a sense of, uh, of examining the physics of the continuum from the time Mr Parasol parked his jeep at the airport and got onto the airplane that there is a continuation. So if it was begun in Alaska, I guess it was continued up until such point as the airplane leaves Alaskan airspace. Well, this raises the question of 18 U. S. Code 32 38, which would address what happens in the air. Okay, at least until he gets on the airplane. I believe overflight of Alaska until he gets out of Alaska. The district of Alaska, which would be down your catch again. I believe that would be consistent with Corona and other cases. That's still the district. Okay, and I think I know the answer to this one. I want to make sure that we just cover it was the offensive conviction completed in Alaska. I think it has to be no because they stopped him in Seattle. There's no evidence that it was completed in Alaska. Your Honor. Yes, there's a lot of evidence that it wasn't because they stopped him in Seattle. Yes, he did not obtain that cocaine on the airplane headed for Seattle on the way out. So if we're gonna get venue, you've got to do either. It was begun in Alaska or continued in Alaska or maybe both. Possibly. And the fact that it was aimed at Alaska. Yes, I think is off the table because it wasn't completed in Alaska. He maybe wanted to complete it in Alaska, but he didn't. Well, it's off the table. I believe your honor under Ninth Circuit president. However, the government has argued that because this was aimed solely at Alaska, this offense from beginning to end was aimed solely at Alaska. I'd be very much. It said aimed. Well, it says it says completed. Yes, your honor. And it wasn't completed Mohammed in Alaska. Yes, sir. Mohammed and Zidelle cases, which both referred to 32 37 did not require that the offense have been completed for the court to consider among all factors whether venue was proper. Yeah, I don't think they can read English, but I don't. I'm not sure you lose because let's focus back on the begun. I mean, what happened in Alaska before he left? Here's what happened. First of all, the government put on evidence at trial of conduct immediately preceding the events of October 14th when the defendant got on the airplane on this fateful third trip and the government argued to the jury that these events were so close in time that essentially an ongoing course of court effort in a venue case, a reliable prediction of what the defendant was doing when he went to the airport on October 14th was already in place based upon existing facts. The defendants live in. Why are we talking about prediction? Why are we saying, listen, he looks, it sounds like you got a telephone call that set up the deal, at least at the point of where he's supposed to go to Tucson. Yes, sir. This is an attempt. It's not. You're not prosecuting him now for conviction for possession. It's rather for attempt to possess. Yes, sir. He gets a phone call. He gets a phone call. Reasonable inference from the fact of the phone call is that somebody is saying, Hey, the deal is on. Come on down to Tucson. He gets on the airplane. Well, your honor, actually, I don't. I think the evidence is quite clear at trial that it was not a person in Arizona or saying coming down to Tucson. The person who made the phone call was actually identified by the defense and cross-examination is Mr Stearns, who lives in Salkeetna, just where Mr Parasol did. And the defense throughout the trial asserted that Mr Parasol was only a mule for this Mr Stearns over the repeated objections of the government. The government has never relied on imputing any acts by Mr Stearns to the defendant for purposes of venue. But the meaning of the phone call is established by the witness who handed the phone to Mr Parasol, his girlfriend. She said she recognized it as Mr Stearns. That is his voice. And she's had this phone call before two other times, pursuant to which she packed a bag for Mr Parasol, drove with him in her jeep to the Anchorage airport, sent him off to Tucson. He came back virtually overnight both times. And on one occasion, one of those trips, she testified she saw two bags of methamphetamine in the back seat of the truck. Okay, I got it. So it's a bottom line for purposes of 32 37 A. Uh, the government believes that although this crime finished in Seattle because he didn't go any farther, it started here and therefore it satisfies that statute. That's correct. And the and the actions that you believe started here were what the phone called going to the airport, getting on the plane with that intent. Is that what's what we're talking about? Yes, Your Honor. And also parking the jeep there is a significant event. Judge Bychline specifically referred to it in finding that there was venue under 32 37. It's also significant, Your Honor. And it's actually an issue that's all bound up in the propriety of venue. In this case, I argued to the jury and you can tell from today's weather, this is a good day in summer. In wintertime, in October, no Alaskan in his or her right mind would go down to Tucson, Arizona, stay for 18 hours total and be back in Alaska. They just stay down there. Well, they'd stay for a couple of days at least because we need sunshine at that time of the year. The days are already getting short. It's just it's nonsensical that an Alaskan would would spend nearly $1500 on a round trip prepaid ticket to Tucson, Arizona, without having made prior arrangements, arrangements that you could count on. And the proof that the firmness of the defendant's resolve was to go down there and get met again was the evidence of his live in roommate that he had done that twice before less than three weeks before this trip. But for purposes of the venue, I believe your opposing counsel conceded, and I gather the government does as well. The venue is not an element of the crime of conviction. Is that correct? That's correct. So for purposes of the venue part, we're just talking about whether 32 37 a has been satisfied. You indicated what your points are. The phone call parking of the Jeep exposed getting on the airplane occurred in the district of Alaska of Alaska. That is part of the what statute here talks about begun in one district and completed in another. And that's that satisfies. Yes, Your Honor. And there's one more act that the government would allude to. The government use some evidence in terms of intent and getting in the airplane October 14th from before that time. There's one jail phone call that while the defendant was in Seattle was played for the jury. And in that the defendant expressed his regret. That is, it's a backward looking regret. Uh, and the government argued at trial also that that was an admission by the defendant that when he went to the airport, he was going to Tucson to get the drugs, and he regretted now that he did it because he got caught. But are you contending that that phone call occurred in the district of Alaska? No, but he was speaking to his girlfriend who was in the district of Alaska. It has nothing to do with preparation, but it's an admission after the fact of what his intent was when he did left on October that that gives more meaning to the phone call. The parking of the Jeep is correct. Okay. Okay. Thank you very much. Thank you. You might have noticed that we let the government go over. So thank you. Thank you. You say what you need to say. The court had asked me to address Mohammed and Zidelle. And, um, I think the those I think the test in Muhammad goes too far because it basically indicates that the aim of the crime wherever that or there's an effect. The crime has an effect on jurisdiction that will establish a sufficient venue. And if you look at the this court's precedent, it's not that easy to get venue. And and here, I'm not gonna dispute the defendant possessed the drugs. And so he begun the the crime of possession, and he actually completed that crime. But there's not. But you see here, I think it's important that the crime of which he was convicted is not possession. If the crime were only possession, I might be very sympathetic. The idea he didn't begin the crime of possession until he possessed. But the crime for which he was convicted was attempt. So when does he start trying? Well, the I will agree that he got on the plane and well, he got the acquired the drugs in Arizona. So I would argue that that's where the attempt began, because until he went, what was he doing in Alaska? When he gets that phone line? Was he just at that point thinking he's going to go for a quick swim and come home? Well, he still has to intend to distribute the drugs. I mean, the case is unusual because we don't have any by set up. We don't have any potential buyer. We don't have any transaction that's gonna happen with these drugs that he possessed. They don't have any evidence of that. Those aren't elements of the crime, are they? Well, they're indicative of intent to distribute. But the reality is, possession are rather tempted. So and you don't have to show anything is an element of that crime. Do you? What are you gonna do with it afterwards? To prove intent to distribute? I think you do. I have to. I think you have to happen here, right? No, I don't. Well, I don't think it was proven that it would happen in Alaska. They could have. They didn't make. They didn't say that he had intended to distribute the drugs in Alaska. The jury instructions just say, you know, attempted possession with intent to distribute. So your case basically arises and falls on the venue statute from your perspective. You want a new shot? You have to do it because it shouldn't have occurred. Should have been tried before. Judge Weissland. Right? Yes. And so I think Mohammed went too far. It's too easy of a test to me. And also in both the cases, Mohammed and Ziedel, the facts are there's more facts of arranging the transaction by the defendant in the jurisdiction where he's charged with the crime. And so and the Ziedel case is a and there was an eight or a better theory. So it's a different analysis. And the Supreme Court has indicated that. And so it's a circuit that I mean, group liability is a separate issue and we just don't have it here. The government said that the prior flight was close in time. There's a prior travel by the defendant that indicates his venue in this case. But the flight, the 9-17-2008 travel, the government didn't know that. There's testimony that they didn't know if Parisot got drugs on that flight. And I'll just refer to that. 9-17-2008, too uncertain info. We think he went and picked up drugs. They just thought he went and picked up drugs. And that's in the transcript at page two or 26 for Officer Pronto's testimony. So I don't think that's enough there to have the prior bad acts connect this. You want to talk about Davis? Well, the only thing I'm assuming you're talking about maybe doesn't trigger the right to Miranda. Is that the Davis case you're talking about? The real question I'm asking is whether you are somehow alleging that he was sufficiently detained, that if he even intimated that he wanted to talk to a lawyer, that he had to be Mirandized before he went from there. You got... After Davis applies, and there's some discussion about when that occurs, then you've got to be really, really definite about it. But before that, maybe not so much. But I gather this is nothing that was raised in any of the pleadings, right? Well, his statements were suppressed, and the trial judge concluded that he should have been Mirandized when he was detained on the concourse. And that was when he had said maybe, and nothing after that came in. So I didn't see it as an issue. So basically, whatever the issues behind Davis, as far as you're concerned, that's all been resolved. We don't need to consider Miranda issues. No, because we had a favorable Miranda ruling. Okay. All right. So I have more I could say, but I've used up all my time and... Okay. No, no. I think you covered the ground very nicely. I appreciate your consideration. Okay. Thank both sides for their very helpful arguments. Thank you, Your Honor. Thank you, Your Honor. United States versus Paris, so now submitted for decision.
judges: Goodwin, Fletcher, Smith